IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| RACHEL STEIN, ]<br>]<br>Plaintiff, ]<br>]<br>v. ]<br>]<br>THE BIRMINGHAM NEWS, ]<br>]<br>Defendant. ]<br>] | CV-03-BE-1423-S |

**MEMORANDUM OPINION**

**I. INTRODUCTION AND FACTUAL BACKGROUND**

This case is currently before the court on a motion for summary judgment (doc # 32), supporting brief (doc. # 33), and reply brief (doc. # 38) filed by defendant, *The Birmingham News*. Plaintiff Rachel Stein filed an objection to the motion for summary judgment (doc. # 36) and submitted evidentiary materials in opposition to the motion for summary judgment (doc. # 37). The court has jurisdiction of this case pursuant to its federal question jurisdiction under 28 U.S.C. §1331 and has jurisdiction of the state law claims pursuant to 28 U.S.C. § 1367. For the reasons outlined below, the court concludes that the motion for summary judgment is due to be GRANTED in part and DENIED in part.

Construed in the light most favorable to the plaintiff, as the party opposing summary judgment, the facts are as follows. Stein, a former employee of *The Birmingham News*, alleges that her June 11, 2002, termination violated the Americans with Disabilities Act ("ADA") codified at 42 U.S.C. § 12112, *et seq*., the Family and Medical Leave Act ("FMLA"), codified at

1

29 U.S.C. § 2612, and several provisions of Alabama law.[1]  Plaintiff began working in the advertising sales department of *The Birmingham News* in September 1988.[2]  Plaintiff was promoted to the *News*' major accounts team in 1998 where she primarily managed corporate advertising accounts.

On April 26, 1999, Stein injured her wrist while at work.[3]  This injury was mis-diagnosed as a sprain until late November or early December 1999 when the doctors concluded that it was a muscle tear.  The plaintiff's wrist injuries were extensive, ultimately requiring her to undergo surgery in January and again in September 2000.[4]  Stein did not request FMLA leave for her first surgery but requested and was granted FMLA leave for her surgery in September 2000.  After the second surgery, Stein continued to suffer from chronic pain in her wrists and also begin to experiencing pain in her arms.  Stein's condition was ultimately diagnosed as Reflex Sympathetic Dystrophy.  Plaintiff missed approximately fifty-one days of work in 2000.[5]

In January 2001, plaintiff started receiving treatment from doctors specializing in pain management and began taking prescription medication.[6]  Stein missed approximately fourteen

---

[1] Specifically, plaintiff claims retaliation under the Worker's Compensation Act, outrage, and invasion of privacy.

[2] Pl's Dep., p. 297.

[3] *Id.*, p. 40.

[4] *Id.*, p. 50; p. 126.

[5] Clay Decl. ¶ 17.

[6] Specifically, Neurontin, Gabitril, Morphine, Sulphane, Methadone, Actiq, and Elavil.  Clay Decl. Aff., ¶ 18.

days of work in 2001.[7] However, plaintiff testified that in 2001 she still serviced anywhere from fifty to seventy-five accounts, generated approximately 2 million dollars in revenue, and had no major performance problems that resulted in reprimands from her superiors.[8]

Seeking relief from the pain caused by her condition, Stein was hospitalized for the insertion of a spinal catheter in February 2002.[9] During this hospitalization, a large sign was posted on the plaintiff's door indicating that she was to have no visitors except for family members and healthcare providers.[10] Carol White, the director of Human Resources, and *News* employee Shirley Moultrie came to the hospital to visit the plaintiff. A nurse came into Stein's room and asked her if she would allow White and Moultrie to visit. Stein told the nurse that she did not want any visitors.[11] However, the nurse ultimately allowed White and Moultrie to come into the room. According to the plaintiff, White began talking in "legalese" about Stein's Worker's Compensation claim against the *News*.[12] Plaintiff grew extremely upset and began crying.[13] White and Moultrie stayed in Stein's hospital room for an hour and ten minutes despite

---

[7] Clay Decl. ¶ 18.

[8] Pl's Dep., p. 141-42; 149. The defendant disputes this contention, arguing that in September 2001, plaintiff made significant mistakes in accounts. Specifically, the defendant asserts that she revealed to a client the complete advertising strategy despite specific instructions to the contrary from her supervisors and misstated the *News*' policy on corporate discounts to another client. Clay Coleman Decl. ¶¶ 13-16. The defendant also points to the plaintiff's medical records indicating that she told her doctor that she was finding it difficult to work productively in the fall of 2001. However, at the this stage of the litigation, the court must construe the facts in the light most favorable to the plaintiff.

[9] *Id.*, p. 192.

[10] *Id.*

[11] *Id.*

[12] *Id.*, 193-94.

[13] Id.

the plaintiff's repeated assertions that she did not want to talk.[14]

After returning to work from her February 2002 surgery, plaintiff's pain began to spread to her legs.[15] Stein does not dispute that her pain level increased significantly even after the insertion of the spinal catheter, but denies that either her condition or the pain medication affected her ability to perform her job.[16] The plaintiff missed nineteen days of work in January 2002.[17] Stein missed a total of approximately twenty-six days of work after her February 2002 surgery.[18]

In April 2002, Stein met with Tom Lager, the *News*' director of sales and marketing, and Carol White, the director of Human Resources.[19] Lager advised Stein that she had accumulated too many absences.[20] He also told her that upper management was very uncomfortable working with her because of her nerve disease.[21] In what Stein characterized as a demeaning tone of voice, Lager asked her what she was going to do about her job.[22] In response to this question, Stein advised Lager that she intended to keep on working like she had done for the past fourteen or fifteen years. At some point during the meeting, Lager suggested that plaintiff could work in

---

[14] *Id.*, p. 193-95.

[15] *Id.*, p. 148.

[16] *Id.*, p. 148-49.

[17] Clay Decl., ¶ 19.

[18] Clay Decl., ¶ 28.

[19] Pl's Dep., p. 227.

[20] *Id.*, p. 229.

[21] *Id.*, p. 104; p. 229-230.

[22] *Id.*, p. 228.

the phone room.[23]  However, Stein interpreted this comment as a threat, and the availability of other job alternatives was never seriously discussed.[24]  When plaintiff asked if she were being fired, Lager did not respond.[25]

Stein had a second meeting with Lager and White on May 13, 2002.[26]  Lager again asked plaintiff for an update about the nature of her treatment.  When Lager broached the possibility of plaintiff's eligibility for social security disability and/or her eligibility for the *News*' retirement plan, Stein rejected the idea, indicating that, as a single parent, she would be unable to support her family on a disability income.[27]

Plaintiff had a final meeting with Lager and White on June 11, 2002 that resulted in her termination.[28]  During this meeting, which the plaintiff secretly tape-recorded,[29] Lager told plaintiff that the "*Birmingham News* does not want to be represented by someone that looks like her" and again advised Stein of what he described as her only options - a company-sponsored early disability retirement or a year of severance pay.[30]  When Stein inquired about the possibility of other options, White responded that she could either take disability retirement or a severance

---

[23]*Id.*, p. 235.

[24]*Id.*, p. 235-36.

[25]*Id.*, p. 232-33.

[26]*Id.*, p. 241.

[27]*Id.*, p. 241-42.

[28]*Id.*, p. 249.

[29]*Id.*, p. 256.

[30]*Id.*, 254-55.

package, but would be required to immediately leave the building.[31]

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52.

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in part and DENIED in part. The court specifically finds as follows:

(1) Plaintiff has presented sufficient evidence from which a reasonable juror could conclude that she has established a *prima facie* case under the ADA. *See Rossbach v. City of Miami,* 371 F.3d 1354, 1357 (11th Cir. 2004) (holding that a prima facie ADA case requires a showing that the plaintiff is disabled or perceived as being disabled, is qualified to perform the essential functions of his or her job with or without reasonable accommodation, and was unlawfully discriminated against because of a disability or a perceived disability). Specifically, a reasonable juror could conclude from Lager's statements during his meetings with Stein in April, May, and June of 2002, that the defendant perceived her as disabled from, not only her job in

---

[31] *Id.*, 254.

package, but would be required to immediately leave the building.[31]

## II. STANDARD OF REVIEW AND LEGAL FINDINGS

Summary judgment is an integral part of the Federal Rules of Civil procedure and allows a trial court to decide cases where no genuine issues of material facts are present. Fed. R. Civ. P. 56. Disagreement between the parties is not significant unless the disagreement presents a "genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). *See also, Celotex v. Catrett*, 477 U.S. 317, 327 (1986). A factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 251-52.

Having reviewed the briefs and evidence submitted by both parties and construing the facts in the light most favorable to the plaintiff, the court concludes that the defendant's motion for summary judgment is due to be GRANTED in part and DENIED in part. The court specifically finds as follows:

(1) Plaintiff has presented sufficient evidence from which a reasonable juror could conclude that she has established a *prima facie* case under the ADA. *See Rossbach v. City of Miami,* 371 F.3d 1354, 1357 (11th Cir. 2004) (holding that a prima facie ADA case requires a showing that the plaintiff is disabled or perceived as being disabled, is qualified to perform the essential functions of his or her job with or without reasonable accommodation, and was unlawfully discriminated against because of a disability or a perceived disability). Specifically, a reasonable juror could conclude from Lager's statements during his meetings with Stein in April, May, and June of 2002, that the defendant perceived her as disabled from, not only her job in

---

[31] *Id.*, 254.

advertising sales, but from a broad spectrum of jobs. *See Swain v. Hillsborough Cty. Sch. Bd.*, 146 F.3d 855, 857-58 (11th Cir. 1998) (holding that plaintiff must establish that employer regarded her as significantly restricted in the ability to perform either a class of jobs or a narrow range of jobs in various classes to establish substantial restriction in the major life activity of working).

Furthermore, Stein's testimony that she continued to service her accounts, generated approximately 2 million dollars in revenue, and was never disciplined for performance problems despite her absences and health problems is evidence from which a reasonable juror could conclude that Stein was qualified to perform the essential functions of her job. Lastly, plaintiff's June 11, 2002, termination establishes, for purposes of summary judgment, that she was subjected to unlawful discrimination because of a perceived disability.

The court also concludes that she has adduced sufficient evidence for a reasonable fact finder to conclude that the defendant's articulated reasons for her discharge (i.e., concerns about excessive absences and that she posed a direct threat to herself and others) are pretextual. Viewed in their totality, Lager's statements to plaintiff in the spring and summer of 2002, particularly those suggesting that her termination was predicated on upper management's discomfort with her disability, creates a genuine issue of material fact about the validity of the defendant's articulated reasons for Stein's discharge. Accordingly, the defendant's motion for summary judgment for alleged violations of the Americans with Disabilities Act ("ADA") is DENIED.

(2) Plaintiff has presented sufficient evidence from which a reasonable juror could conclude that Stein has established a *prima facie* case of retaliation for the exercise of rights

7

protected by the Family Medical Leave Act ("FMLA"). *See Walker v. Elmore County Bd. of Educ.*, 379 F.3d 1249, 1252 (11th Cir. 2004) (holding that claim of retaliation under the FMLA requires allegation of involvement in statutorily protected activity, an adverse employment action, and evidence that the adverse employment action is causally related to the protected activity).

Given the evidence contained in the record, a reasonable jury could conclude that Stein was an FMLA eligible employee whose absences in 2002 were attributable to a "serious health condition"[32] and thus, were FMLA-qualifying absences. Furthermore, the plaintiff's absences related to her 2002 surgery provided notice sufficient to make the defendant aware that Stein's absences were attributable to a potentially FMLA-qualifying reason. *See Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1436 (11th Cir. 1997) (holding that the employee need only provide her employer with notice sufficient to make the employer aware that her absence is due to a potentially FMLA-qualifying reason." Consequently, the plaintiff's failure to request FMLA leave for absences in 2002 is not fatal to her claim for retaliation for the exercise of rights protected by the FMLA. *See O'Conner v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000) (holding that to state a claim for interference with a substantive right, an employee need only demonstrate by a preponderance of the evidence that he or she was entitled to the benefit denied).

The court also concludes that Stein's June 11, 2002, termination was an adverse employment action. Furthermore, given the temporal proximity between the plaintiff's January

---

[32]The FMLA affords an eligible employee up to twelve weeks of leave within a twelve month period for an employee to care for a spouse "if such spouse . . . has a serious health condition." 29 U.S.C. § 2612(a)(1)(C).

2002 surgery and resulting absences, the court concludes that Stein's June 11, 2002 termination could be causally connected to the exercise of her FMLA-qualifying absences in 2002.

Lastly, for the same reasons articulated in the analysis of Stein's ADA claim, the court concludes that the defendant's articulated reasons for terminating Stein could be pretextual. Accordingly, the motion for summary judgment on the FMLA claim is DENIED.

(3) Plaintiff has presented sufficient evidence to survive the motion for summary judgment on her state law invasion of privacy claim. Under Alabama law, invasion of privacy is defined as "the wrongful intrusion into one's private activities in such a manner as either to outrage a person of ordinary sensibilities or to cause such a person mental suffering, shame or humiliation." *See Portera v. Winn Dixie of Montgomery, Inc.*, 996 F. Supp. 1418 (M.D. Ala. 1998) (citing *Busby v. Truswal Sys. Corp.,* 551 So. 2d 322 (Ala. 1989)).

In this case, Stein alleges that *News* employees invaded her privacy when they ignored a large "no visitors" sign posted on the door of her hospital room. According to the plaintiff, White and Moultrie remained in her room for an hour and ten minutes during which they caused her to cry and badgered her with "legalese" and questions about her worker's compensation claim. Given the requisite standard of review, the court agrees with the plaintiff that a genuine issue of material fact exists about whether White and Moultrie's conduct was of such a nature and quality that it would have been highly offensive to a reasonable person. Accordingly, the defendant's motion for summary judgment on the state law invasion of privacy claim is DENIED.

(4) However, the court concludes that the plaintiff has *not* adduced sufficient evidence to survive a motion for summary judgment on her outrage claim. The tort of outrage requires

9

extreme and outrageous conduct by a person who intentionally or recklessly causes severe emotional distress to another. *Nipper v. Variety Wholesalers, Inc.*, 638 So. 2d 778, 780-781 (Ala. 1994) (citing *American Road Service Co. v. Inmon,* 394 So. 2d 361 (Ala.1980)). The plaintiff must produce sufficient evidence to show that the defendant's conduct is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *American Road Service Co. v. Inmon,* 394 So.2d at 365. *See Also*, *Fitch v. Voit,* 624 So.2d 542 (Ala.1993).

Stein's outrage claim is based on White and Moultrie's conduct during her January 2002 hospitalization. The above-referenced conduct, at worst, may be characterized as "mere insults, indignities, threats [or] annoyances," and not the type of conduct which a juror could reasonably conclude "goes beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Accordingly, the defendant's motion for summary judgment is GRANTED on the plaintiff's outrage claim.

(5) The court also concludes that the plaintiff has abandoned her claim for retaliation under Alabama's Workers' Compensation Act. Although the defendant raised the issue in its motion for summary judgment, the plaintiff's brief in opposition to the motion for summary judgment does not address the Worker's Compensation claim.

In opposing a motion for summary judgment, "a party may not rely on his pleadings to avoid judgment against him." *Ryan v. Int'l Union of Operating Eng'rs, Local* 675, 794 F.2d 641, 643 (11th Cir. 1986). The district court has no obligation to distill every potential argument that could be made based upon the materials before it on summary judgment. *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990). Rather, the onus is upon the parties to

formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned. *Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Given the plaintiff's failure to respond to the retaliation claim under Alabama's Worker's Compensation Act, the defendant's motion for summary judgment is GRANTED.

A separate order will be entered simultaneously with this Memorandum Opinion.

DONE and ORDERED this the 19th day of April, 2005.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE